# In the Court of Common Pleas of Schuylkill County.

## In Equity.

## HECKSHER & CO. v. THE SHENANDOAH CITIZENS WATER AND GAS COMPANY.

In Pennsylvania the common law distinction of what constitutes a navigable river is not recognised.

An owner of land upon a stream that is not navigable has such a property in the stream, that it can not be taken away from him by act of legislature, unless just compensation be first made or secured, and then only for public uses.

Whether an owner of land upon a navigable stream, has such a right of property in the stream, *dubitatur*.

The act of April 8, 1846, prohibiting courts of equity from issuing injunctions against the erection or use of public works, is by its terms limited to courts within the city and county of Philadelphia, nor would the act be of binding force where an injunction is the only peaceable method of preventing a violation of the constitution.

**Motion for a Preliminary Injunction.**

Opinion delivered November 16. 1874, by

GREEN, J.    This is a bill in equity brought for the purpose of enjoining the defendants from diverting a certain stream of water from the complainants' colliery and appropriating it to their own use.    It sets forth that the plaintiffs are the owners of an extensive colliery erected under a lease from the owners of the land, John Gilbert et. al., having a number of years to run; that the colliery has eleven boilers for the purpose of generating steam and that it is dependent for its supply of water upon a stream running through the land on which they have built two dams, that the colliery cost about two hundred and fifty thousand dollars and employs about three hundred miners and laborers; and that in addition to the colliery the stream supplies the wants of about twenty-five families residing in the immediate neighborhood, and of about thirty-five head of horses and mules employed by the plaintiffs.    It further sets forth that the defendants threaten and have attempted to appropriate the said stream so as to deprive the plaintiffs of the same without making compensation or giving security therefor.    An injunction is asked to restrain the defendants.

A good deal of evidence has been taken, but as to most of the facts of the case there is no dispute.    The evidence showed that the defendants intended to appropriate only a portion of the stream.    Whether this would leave the plaintiffs with a sufficient supply of water for all the purposes of their colliery during a period of drought is a question as to which there is considerable conflict of testimony.    It would *seem* that

during an ordinary season neither the plaintiffs nor the defendants would require the portion of the stream in dispute—that it is only in seasons of dry weather as that region is now suffering under that it becomes important and valuable  The defendants not only supply the borough of Shenandoah with water, but also five or six extensive collieries in and around the borough and one in the Mahanoy valley.

The sources of the stream in question are two springs upon the mountain, some distance apart, upon what are generally known as the Girard Lands.  The lower spring appears to be of somewhat greater capacity than the upper, and the streams flowing down the mountain from them unite some distance above the plaintiffs' dam.  A three or three and a half-inch pipe would probably carry all the water from the two springs. The defendants have laid a two inch pipe to the lower spring for the purpose of tapping it and appropriating it to their own purposes.  This they claim they have a right to do under their charter without making compensation beforehand or giving security therefor.

This raises a question of law.  Can the legislature of the State give authority to appropriate a stream for public uses, making no provision for compensation, without violating that section of the declaration of rights of the constitution which declares that "private property shall not be taken or applied to public use without authority of law and without just compensation being first made or secured?"  Or is there no such taking of private property in the present instance, as is contemplated by the constitution, and is the injury done to the plaintiffs only of such a consequential character that they are entitled to no redress?  We must determine what the nature of the property is which a riparian owner has in the stream, and whether it is of such a character as may be taken away in the constitutional sense.

A very marked distinction appears to run through the cases between streams which are navigable and those which are not, in respect to the property which riparian owners may have in them.  In a navigable stream the owner of the soil owns only up to low water mark, the ownership of the soil beyond that, and of the water, remaining in the state. But in a stream that is not navigable the owner carries his title to the soil *usque ad filum medium aquæ,* and if he owns on both sides then he is the owner of the entire bed of the stream and has a qualified ownership in the water itself.  He has such a property in it that his neighbor above may not deprive him of it nor divert it out of its accustomed channel so as to change its course over his land.

This distinction is very clearly recognized and followed in the case of Shrunk v. The Schuylkill Nav. Co., 14 S. & R., 71.  The common law of England defines a navigable river to be one in which the tide ebbs and flows, but in Pennsylvania this definition is decided to be too

narrow, and rivers like the Susquehanna, Lehigh, Allegheny &c., are de-
clared to be navigable rivers owned by the public, with all the rights of
navigation and fishing unimpaired by any rights of the owners of the
soil along their banks.    The remarks of Chief Justice Tilghman in the
case cited are very suggestive of the distinctions we have spoken of.    He
says "as for the soil over which our great rivers flow, it has never been
granted to any one, either by Wm. Penn, or his successors or the state
government.    Care seems to have been taken from the beginning to pre-
serve the waters for public uses, both for fishing and navigation ; and
the wisdom of that policy is even more striking than ever, from the great
improvements already made and others in contemplation, to effect which
it is often necessary to obstruct the flow of the waters in some places and in
others to divert its course.    It is true, that the State would have had a right
to do these things for the public benefit, even if the rivers had been pri-
vate property ; but then compensation must have been made to the
owners, the amount of which might have been so enormous as to have
frustrated, or at least checked these noble undertakings."    The same dis-
tinction is recognized in the Monongahela Bridge Co. v. Kirk 10
Wright, 112.    The court says that the Monongahela river was by the
settled law of Pennsylvania, independent of any act of assembly, a nav-
igable river, and the soil of the river up to low water mark, and
the river itself were the property of the Commonwealth, as
clearly as any tide water river in England is the property of
the Crown, and that whilst by the common law of England mighty
waters such as the Mississippi, Missouri and others were not nav-
igable rivers, but were the subject of private property, yet a more
common sense view has been adopted in this State, and all rivers
recognized as navigable which were really so.    In McKeen v. The Dela-
ware Division Canal Co. 13 Wr. 424, the same doctrine is held.    It is
there said that "many laws have been passed, stamping upon numerous
smaller streams the same character, to preserve the public control of the
benefit of the highway.    The courts have maintained the absolute power
of the Commonwealth over navigable streams for their improvement as
great highways of the people."    And further says "every one who buys
property upon a navigable stream purchases subject to the supreme rights
of the Commonwealth to regulate and improve it for the benefit of all
her citizens."

     Whilst therefore under these decisions it is doubtful whether an
owner of land upon a navigable stream can have such a property in the
stream as to entitle him to compensation if it were taken away, I conceive
there can be none, as to an owner of land upon a stream that is not navi-
gable.    But the defendants contend that the only property the plaintiffs
have is the right to the use of the water as it flows by—not an absolute

property in the water itself, and that therefore the taking of the water, is not a taking of anything that belongs to the plaintiffs, that it is only depriving them, not of the right of using but of the power of using the water, and that from this it follows that the damage is in the nature of a consequential injury for which there is no redress, and against which the constitution and the charter of the company does not provide.

But this is a refinement of logic which the law will not indulge in for the purpose of stripping one of his rights of property. Nothing is more clearly decided than that when you take away the subject matter upon which a grant is to operate, you take away the grant itself. As well strip the eagle of his plumage, and then say that you have only deprived him of the power, not of the right to fly. A bare naked right this would be indeed ; nay it is but cruel mockery to dignify it with the name of a right. When the company diverts the stream, it takes that away from the plaintiffs which they have a right to have. If the company may do this, then the filling up of the channel with earth would be no infringement upon the plaintiffs' right to the water even though it might leave them high and dry, and they should thereby cease to be riparian owners.

It is undoubtedly the law, affirmed and re-affirmed by numerous decisions that the state and those acting under her authority are not liable for consequential damages. I need but refer to the cases of the Monongahela Nav. Co. vs. Coons 6 W. & S. 101. Susquehanna Canal Co. vs. Wright—9 W. & S. 9. West Branch & Sus. Canal Co. vs. Mullinn 18 P. F. S. 360 ; Phila. & Trenton R. R. Co. 6 Whar: 25 and many others. But the present case is not one of consequential damages merely—and therefore the authorities cited do not rule the present case.

If we go beyond the limits of the state we shall find that the decisions speak just as clearly upon this question. The case of Gardner vs. The Village of Newburgh 2 Johnson 's Chan. Rep. 162—decided by Chancellor Kent is similar, in all its essential features, to the present case. It was an application by an owner for a preliminary injunction to restrain the defendants from taking and diverting a stream of water flowing through his land, and which they were about to lead through pipes to the village for the purpose of supplying the inhabitants.

The statute giving the village the authority had provided for compensation to the owner of the spring and to the owners of land or materials that might be taken, but had made no provision for those who owned land along the stream flowing from the spring. The distinguished chancellor in his opinion says "it is a clear principle of law, that the owner of land is entitled to the use of a stream of water which has been accustomed from time immemorial to flow through it, and the law gives him ample remedy for the violation of this right," and further says "a right to a stream of water is as sacred as a right to the soil over which it flows."

An injunction was granted in this case. As illustrating the same general doctrines, see also the case *ex parte* Jennings 6 Cowen 527, and Kents Com. vol. 2 Star pages 338-9 and 340, and the notes thereto.

The defendants not having made compensation or given security therefor, I think it clear under the authorities as well as from the general principles of justice that they have no right to take this stream, and that therefore, an injunction must issue. It becomes unnecessary for me to discuss the question whether the injury to the plaintiffs by the taking, would be great or small. That is a matter to be decided in another manner.

It is enough to know that plaintiffs' property is proposed to be taken without compensation. It is almost needless to remark that plaintiffs' right to this property is derived from the lease, and the possession they have under it, and that the ownership after the expiration of the lease would again revert to the owners of the soil.

The Shenandoah Citizens Water & Gas Company was incorporated by virtue of an act of Assembly, passed the 25 Feb. 1870, Pamph. Laws, 1870 p. 246. By the second section, they are authorized *inter alia* to erect fixtures and take water from the stream known as Keely's run, and from other streams flowing upon the property of sundry persons or companies draining the lands situate along the mountain on the north side of said borough, to enter upon lands, &c., to obtain necessary material &c., and then it is provided that "if any injury is done to private property, the said company shall make compensation therefor, in the manner hereafter provided." Here is an express provision which will not only embrace the taking of property, but will include all injuries done to property whether they be direct or consequential.

But it is to be noted that Sec. 6 which provides the method of making compensation, only provides "for damages claimed for *lands or materials taken* by the company;" whether this will include damages for the taking of a stream or not, or whether there has been an over-sight in providing for the latter, it is not necessary for us to decide.

It is no more than just that such damages should be paid, for the taking of a stream might work most serious injury to a colliery and the case would be one of particular hardship and injustice, where the effect would be to take it from one colliery and to give it to others. Damages for injury both direct and consequential are generally provided for in the acts incorporating water companies and the general law passed last winter also makes such provision. Clause 2, Sec. 34 and Sec. 41 of act of 29 April, 1874. Pamph. Laws 1874, p. 73. Would it not be more consonant with justice, and would it be doing violence to the language used to hold that "the damages claimed for lands or materials taken" was also intended to include the damages for the taking of streams? But we are not called upon to decide this in the present case.

The defendants claim that it includes damages only for land and materials taken.

It is further urged that the works of the defendants are public in their character, and that by reason of the prohibition contained in the Act of 8 April 1846, P. L. 272, the authority of the Court to issue an injunction is taken away. But a reference to the act shows that the prohibition extends only to courts within the city and county of Philadelphia. Besides it must be evident that the Legislature has no right to nullify that article of the constitution, which provides that compensation must be made or security given before private property can be taken or applied to public uses, and this can only be enforced by injunction or by the strong hand.

For the reasons we have given the preliminary injunction is granted.